**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JONATHAN SHORTALL,** | ) | |
| | ) | **No. 08 C 3493** |
| **Plaintiff,** | ) | |
| | ) | **Judge Norgle** |
| **v.** | ) | |
| | ) | **Magistrate Judge Cole** |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

Defendant City of Chicago ("the City"), by its attorney, Mara S. Georges, Corporation Counsel of the City of Chicago, submits this memorandum in support of Defendant's Motion to Dismiss in Plaintiff's Complaint.

**INTRODUCTION**

Plaintiff Jonathan Shortall ("Shortall") is a Chicago police officer and a member of the United States National Guard. See Complaint, ¶ 7.  He alleges that in early 2006, while he was on military duty in Iraq, he registered to take the written component of the 2006 Police Sergeant Examination ("the Examination").  Id., ¶¶ 11.  Shortall claims that he learned that the only accommodation the Chicago Police Department ("CPD") provided for those serving on active duty in Iraq was for the soldier to travel to Germany or Quatar.  Id., ¶ 12. Shortall does not claim that he requested any form of accommodation from the City to take the written component, or any other component of the Examination.  As such, he has not alleged that he suffered a discriminatory employment action by the City.

Shortall filed his Complaint against the City on June 18, 2008, two years after the alleged failure to accommodate.  See Complaint.  In Count I, Shortall seeks declaratory and injunctive relief for an alleged violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA").  Id., Count I.  In Count II, Shortall seeks compensatory and punitive damages, injunctive relief, and attorneys' fees and costs for an alleged violation of USERRA.  Id., Count II. In Count III, Shortall seeks compensatory damages, injunctive relief, and attorneys' fees and costs for an alleged violation of the Illinois Service Member's Employment Tenure Act ("ISMETA").  Id., Count III.  In Count IV, Shortall seeks compensatory and punitive damages, injunctive relief, and attorneys' fees and costs for an alleged violation of the Illinois Military Leave of Absence Act ("IMLOAA").  Id., Count IV.  Finally, in Count V of his Complaint, Shortall seeks compensatory and punitive damages, injunctive relief, and attorneys' fees and costs for an alleged violation of the Illinois Human Rights Act ("IHRA").  Id., Count V.

For each of the reasons stated below, Shortall's Complaint must be dismissed.

## ARGUMENT

## I.  SHORTALL CANNOT CLAIM PUNITIVE DAMAGES BECAUSE THE STATUTES DO NOT PROVIDE FOR SUCH DAMAGES AND THE CITY IS IMMUNE FROM SUCH CLAIMS

Shortall seeks punitive damages in Counts II, IV, and V of his Complaint.  The Court should dismiss such claims because USERRA does not provide for punitive damages (38 U.S.C. § 4301, et. seq.) and because the City is immune from punitive damages in federal and state actions (City of Newport, 453 U.S. at 271; 745 ILCS 10/2-102).

USERRA protects the civilian employment of non-full time military service members in the United States called to active duty.  Individuals may seek to enforce their USERRA rights by

applying to the Secretary of Labor for assistance or by filing a lawsuit seeking relief.  38 U.S.C. §

4321, et seq.  The statute specifically describes the relief a court may award, and is silent as to

the awarding of punitive damages.  38 U.S.C. §§ 4323(d).  Thus, USERRA does not authorize an

award of punitive damages.  Vander Wal v. Sykes Enterprises, Inc., 377 F. Supp.2d 738, 746 (D.

N.D. 2005) (USERRA does not allow for the recovery of punitive damages).

     Furthermore, the City is immune from punitive damages in both federal and state court

actions.  City of Newport, 453 U.S. at 271; 745 ILCS 10/2-102.  In City of Newport, the United

States Supreme Court found that common law courts consistently and expressly decline to award

punitive damages against municipalities.  453 U. S. at 259-66.  The Supreme Court then held that

legislation that is silent on the subject of municipal immunity from punitive damages must be

interpreted as approving of the standard common law rule.  Id.  In addition, the Supreme Court

held that considerations of public policy do not support exposing a municipality to punitive

damages for the malicious or reckless conduct of its officials.  Id. at 266-71.  Punitive damages

against a municipality punish only the taxpayers, who took no part in any such conduct.  Id.

Neither the retributive nor the deterrence objectives of punitive damages would be significantly

advanced by holding municipalities – i.e. taxpayers – liable for such damages.  Id.   Thus, even if

USERRA provided for punitive damages – which it does not – the City would be immune from

such damages under federal law.

     Significantly, the Illinois legislature expressly granted municipal immunity from punitive

damages, stating in Section 2-102 of the Tort Immunity Act that "[n]otwithstanding any other

provision of law, a local public entity is not liable to pay punitive or exemplary damages in any

action brought directly or indirectly against it by the injured party or a third party."  745 ILCS

10/2-102.  Thus, even if IMLOAA and IHRA, the laws invoked by Shortall in Counts IV and V

of his complaint, provided for punitive damages, the City would be immune from such damages

under state law.  Id.  (Shortall does not seek punitive damages in Counts I and III.)

II.    **SHORTALL CANNOT BRING A CLAIM UNDER ISMETA BECAUSE ANY SUCH CLAIM IS TIME-BARRED BY THE APPLICABLE ONE-YEAR STATUTE OF LIMITATIONS**

Shortall waited two years to file his Complaint.  The Illinois Tort Immunity Act, sets a

one-year limitation for any legal actions against a municipality based upon the common law or

statutes or Constitution of Illinois, with the sole exception of legal actions "arising out of patient

care."  745 ILCS 10/8-101.  The present lawsuit does not fit into that narrow exception, since it

does not arise out of patient care, and, therefore, the one-year limitation applies.  In Paszkowski,

the Illinois Supreme Court held that the Illinois legislature intended section 8-101 of the Tort

Immunity Act to apply broadly to any possible claim against a local governmental entity.

Paszkowski,  213 Ill. 2d at 12-13.  Therefore, the Tort Immunity Act necessarily controls over

other statutes of limitation or repose.  Id.  Thus, the statue of limitations for bringing an action

under ISMETA against a municipality is one year.  745 ILCS 10/8-101; see also Paszkowski, 213

Ill. 2d at 12-13.

Shortall claims that he was denied a reasonable opportunity to take the written component

of the Examination in March 2006.  Accordingly, the statute of limitations for an ISMETA claim

against the City expired in March 2007.  745 ILCS 10/8-101.  However, Shortall did not file suit

until June 18, 2008, over a year after the statute of limitations had run.  The Court should dismiss

Count III of Shortall's Complaint because it is time-barred by the applicable one-year statute of

limitations.

- 4 -

III.    **SHORTALL CANNOT BRING A CLAIM UNDER IMLOAA OR IHRA BECAUSE HE FAILED TO ALLEGE THAT THE CITY VIOLATED THOSE STATUTES OR THAT HE EXHAUSTED HIS ADMINISTRATIVE REMEDIES**

IMLOAA does not provide for a private right of action except under IHRA.  5 ILCS 325**.**  IMLOAA does not set up its own means of enforcement, but instead states that "[a] violation of this Act constitutes a civil rights violation under the Illinois Human Rights Act."  5 ILCS 325/1.01**.**  Therefore, Count IV of Shortall's Complaint, alleging a violation of IMLOAA, and Count V of Shortall's Complaint, alleging a violation of IHRA, are redundant.  Both counts essentially allege the same violation of IHRA, and are subject to all the requirements of IHRA.

Indeed, Shortall recognizes this in Count V of his Complaint, where he quotes section 6-102 of IHRA, stating in part that "[a] person who violates the Military Leave of Absence Act ... commits a civil rights violation within the meaning of this Act."  Complaint, ¶41.  He bases Count V on the same violation of IMLOAA alleged in Count IV.

A.    **Shortall Failed To Allege That He Was Deprived Of Regular Compensation, Benefits Or Seniority.**

Shortall's allegation that the City violated IMLOAA, and therefore also violated IHRA, is fatally flawed.   The IMLOAA provides that military reservists shall accrue regular compensation, benefits, and seniority during a military leave of absence.  5 ILCS 325/1.  IMLOAA does not provide for the reasonable opportunity to take promotional examinations.  5 ILCS 325.  Because Shortall fails to allege that he was deprived of regular compensation, benefits or seniority –  the rights protected by IMLOAA, through the enforcement mechanism in IHRA – during his military leave of absence, the Court should dismiss Counts IV and V of Shortall's Complaint.

**B.    Shortall Also Failed To Allege That He Exhausted The Administrative Remedies Provided In IHRA.**

In order to invoke the protections of the IHRA in Counts IV and V, Shortall must also comply with the IHRA's provisions.  Talley, 37 F.3d at 312-13; Shelton, 143 F. Supp.2d at 990. The IHRA does not allow Shortall direct access to the court system.  Talley, 37 F.3d at 312-13; Shelton, 143 F. Supp.2d at 990.  Instead, Shortall must first file a charge with the Illinois Department of Human Rights.  Shelton, 143 F. Supp.2d at 990.  Shortall may not file a court action for his IHRA claim without exhausting his state administrative remedies.  Shelton, 143 F. Supp.2d at 990-91.  Shortall must allege that he has exhausted the administrative remedies provided in IHRA to properly state a claim.  Id.

As noted above, Shortall's IMLOAA claim in Count IV must be brought under IHRA, and therefore it is an IHRA claim – indeed the very same IHRA claim Shortall brings in Count V, which is based on an alleged violation of IMLOAA.  However, even if Shortall could distinguish Count IV from Count V, they still are both IHRA claims that must be filed first with the Illinois Department of Human Rights.  Talley, 37 F.3d at 312-13; Shelton, 143 F. Supp.2d at 990.  Shortall has failed to state a claim under IMLOAA or under IHRA because he has not alleged that he exhausted the administrative remedies provided in IHRA and incorporated into IMLOAA.  Therefore, this Court should dismiss both Counts IV and V because this Court lacks subject matter jurisdiction over those claims.

- 6 -

**IV.    SHORTALL HAS NOT ALLEGED THAT HE SUFFERED A
        DISCRIMINATORY EMPLOYMENT ACTION.**

In order to properly plead a claim of employment discrimination under USERRA,

Shortall must allege that the City took discriminatory employment actions against him that were

motivated at least in part by his military service.  38 U.S.C. § 4311(c)(1); see Tartt v. Northwest

Community Hospital, No. 00 C 7960 (Oct. 5, 2004), 2004 WL 2254041, *5,(court dismissed

USERRA claim on the grounds that plaintiff failed to state a discriminatory employment

action)(attached hereto as Exhibit A).  Thus, Shortall must allege that the City took some adverse

action against him to survive a motion to dismiss.

Shortall does not allege that the City took any discriminatory employment action against

him.  Rather, Shortall's Complaint offers the bare conclusory allegation that the City violated

USERRA by denying a reasonable accommodation for Shortall.  However, the facts contained in

Shortall's complaint are not supportive of this legal conclusion.  Shortall alleges that after he

paid to take the written component of the Examination, he learned that the only

"accommodation" the CPD provided those serving on active duty in Iraq was for the soldier to

take the examination in Germany or Quatar, effectively admitting that the City provides an

accommodation for soldiers to take the examination while on leave.  Based on this information,

Shortall further claims that he *chose* not to seek leave from his unit to travel to Quatar or

Germany take the examination.  Shortall does not allege that he requested an accommodation to

take the examination nor does he allege that the City denied this request.  Moreover, Shortall

does not allege that he was unable to take the examination while he was on military leave, but

rather admits that he voluntarily decided not to take the written examination.  Shortall has failed

to allege any facts that show that the City took any adverse employment action agsinst him, nor has he alleged that any action taken against him was motivated by his military service.  Absent these necessary facts, plaintiff's claims against the City under USERRA must be dismissed.  See Paneras v. Liquid Carbonic Industries Corp., 74 F.3d 786, 792 (7th City 1996) ("While federal notice pleading allows for a generous reading of a complaint, in order to resist a motion to dismiss, the complaint must at least set out facts sufficient to 'outline or adumbrate' the basis of the claim.") Shortall's USERRA claim, therefore, fails.  Because Shortall's other claims are also based on an alleged failure to provide testing accommodations, they fail for the same reason as that his USERRA claim fails.

## CONCLUSION

Because USERRA does not provide for punitive damages and the City is immune from such damages, and for all the reasons discussed above and in the City's motion, the City respectfully requests that the Court dismiss, with prejudice, Shortall's claims for punitive damages in Counts II, IV, and V of his Complaint.  Because Shortall's claims against the City under ISMETA are time-barred under the one-year statute of limitations, and for all the reasons discussed above and in the City's motion, the City respectfully requests that the Court dismiss, with prejudice, Count III in its entirety.  Because Shortall failed to allege that he was deprived of regular compensation, benefits or seniority, the benefits protected by IMLOAA through IHRA, or that he exhausted his administrative remedies under IHRA, and for all the reasons discussed above and in the City's motion, the City respectfully requests that the Court dismiss Counts IV and V in their entirety.  Finally, because Shortall failed to allege that he suffered a discriminatory

employment action that was motivated by his military service, Counts I and II should be

dismissed with prejudice in their entirety.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the
City of Chicago

By:     *s/Melanie Patrick Neely*
MELANIE PATRICK NEELY
TIMOTHY SWABB
Assistants Corporation Counsel

30 North LaSalle Street, Suite 1020
Chicago, IL 60602
(312) 744-5114/7630

- 9 -



Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2254041 (N.D.Ill.)

**H**Tartt v. Northwest Community Hosp.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Derrick B. TARTT, Plaintiff,
v.
NORTHWEST COMMUNITY HOSPITAL [FN1] and
Northwest Suburban Anesthesiologists, Ltd.
Defendants.

> FN1. Plaintiff Tartt improperly names
> Defendant Northwest Community Hospital
> as Northwest Community Healthcare.
> **No. 00 C 7960.**

Oct. 5, 2004.

Wyvonnia Ford Bridgeforth, Law Office of
Wyvonnia Ford Bridgeforth, Oak Park, Derrick B.
Tartt, Derrick B. Tartt, Elmwood Park, IL, for
Plaintiff.
Brian S. Hucker, Lizabeth Ann Boyer, Mcdermott,
Will & Emery, Trent P. Cornell, Duane Morris LLC,
Michael Lawrence Duffy, Kelley Drye & Warren
LLP, Chicago, Michael B. Brohman, Kamensky &
Rubinstein, Lincolnwood, IL, for Defendants.

OPINION AND ORDER

NORGLE, J.
*1 Plaintiff Derrick Tartt ("Tartt"), a licensed
anesthesiologist, has filed his second Amended
Complaint against Defendants Northwest Community
Hospital ("NCH") and Northwest Suburban
Anesthesiologists ("NSA"). Tartt alleges employment
discrimination in violation of the Uniformed Services
Employment and Reemployment Rights Act of 1994
(" **USERRA**"), and Title VII of the Civil Rights Act
of 1964 ("Title VII").

Presently before the court are a total of five motions.
The following motions are granted: NCH's Motion to
Strike [97-1], NCH's **Motion** to **Dismiss** Amended

Complaint [91-1], and NSA's **Motion** to **Dismiss**
Amended Complaint [90-1]. The following motions
are denied: NCH's Rule 11 Motion for Sanctions [90-
2], and Tartt's Motion for Leave of the Court to File
The Plaintiff's Answers to the Defendants' **Motions**
to **Dismiss** Our Amended Complaint, Instanter [92-
1].

I. INTRODUCTION

A. Background

In order to properly understand the motions before
the court, the court undertakes a brief analysis of the
protracted history of Tartt's litigation against the
Defendants. In July 1993, Plaintiff Tartt, African
American, signed an employment contract with NSA.
Mem. of Law in Supp. of Def. NCH's **Mot.** to
**Dismiss** Am. Compl., 1, Ex. A. NSA provided
anesthesiology services to NCH. Tartt worked for
NSA, at NCH, as an anesthesiologist until July 1994.
At that time, Tartt took a leave of absence in order to
join the United States military.[FN2]Tartt was honorably
discharged from the military, and returned to NSA
and NCH in December 1996.

> FN2. Tartt did not enter the military
> voluntarily. While he was in college, Tartt
> enlisted in the Reserve Officer's Training
> Program ("ROTC").SeeTartt v. Secretary of
> the Army, No. 93-4550, 1994 U.S. Dist.
> LEXIS 2707, at *1 (N.D.Ill. March 9, 1994).
> The written agreement Tartt signed with
> ROTC indicated that following his
> graduation, Tartt would serve on active duty
> in the military for three years. Id. Upon
> graduating from medical school, however,
> Tartt refused to report for duty, and filed a
> petition for habeus corpus relief. Id. at 2.
> Ultimately, Judge Conlon denied Tartt's
> petition, and ordered Tartt into the military.
> See Minute Order of May 5, 1994 (Conlon,
> J.).

NSA asserts that while Tartt was in the military, he

© 2008 Thomson Re... ...to On... US Gov. Works.



Not Reported in F.Supp.2d                                                                                                           Page 2
Not Reported in F.Supp.2d, 2004 WL 2254041 (N.D.Ill.)

practiced anesthesiology at NCH (in violation of his employment agreement), and misappropriated the proceeds he received for those services. As a condition of his continued employment with NSA, Tartt signed a revised employment contract in April 1997. *Id.,* Ex. B. In that revised contract, Tartt acknowledged that he had violated provisions of the initial employment contract during his leave of absence, and agreed to repay the $18,250 he had misappropriated from NSA during that time. *Id.,* Ex. B, 1-2. Tartt worked for NSA, at NCH, until NSA terminated Tartt's employment in November 2000.

On December 20, 2000, Tartt filed a *pro se* complaint (case number 00-C-7960) against NSA and NCH, seeking relief under USERRA[FN3] and Title VII. On that same date, Tartt filed a nearly identical *pro se* complaint (case number 00-C-7959) against NSA alone. The essence of Tartt's complaints is that, following Tartt's return from military service, the revised employment agreement Tartt signed with NSA unlawfully denied Tartt employment benefits that he would have obtained but for his race and his military service. For purposes of clarity, the court will refer to the instant case, case number 00-C-7960, as "7960," and Tartt's second case, case number 00-C-7959, as "7959."

> FN3. USERRA is a federal statute promulgated to prevent workplace discrimination against individuals returning from military service. An individual who held a civilian job prior to entering the United States military is entitled to, *inter alia,* her job back, with seniority and benefits. *See* 38 U.S.C. § 4301 *et seq.*

The court dismissed 7960 in March 2001, noting that Tartt could not proceed on his Title VII claim, as he had failed to first file a discrimination charge with the EEOC, nor could he proceed on his USERRA claim, as it was "rambling, confusing, not concise, not short and plain." *See* Minute Order of Mar. 1, 2001. The court, however, granted Tartt leave to file an Amended Complaint. *Id.* Tartt then filed, *pro se,* Amended Complaints in both 7959 and 7960. The first Amended Complaint in 7960, filed March 23, 2001, again alleged employment discrimination based on Tartt's race and military service. This Complaint was thirty-four pages long, failed to include numbers for all paragraphs, and contained a

rambling nineteen page section styled "Federal Question Jurisdiction." Both Defendants filed Motions to Dismiss, asserting that Tartt's claims must fail, as Tartt was never employed by the NCH, stated no cognizable claim under USERRA, and failed to file a EEOC complaint. The court denied these motions, but, *sua sponte,* noted that cases 7959 and 7960 appeared to be nearly identical, and issued a rule to show cause as to why one of them should not be dismissed. Tartt, by now represented by counsel, failed to respond to the court's rule. The court therefore dismissed 7960. *See* Minute Order of May 30, 2002.

*2 Tartt then filed a Motion to Reconsider the court's dismissal of 7960, which the court denied. On appeal, however, the Seventh Circuit reversed and remanded. *Tartt v. Northwest Comty. Hosp.,* No. 03-1558, 2003 U.S.App. LEXIS 21917 (7th Cir. Oct. 21, 2003). The court then granted Tartt leave to file a second Amended Complaint.[FN4]

> FN4. Judge Norgle dismissed 7959 on January 29, 2003. *See* Minute Order of January 29, 2003. The Seventh Circuit finally terminated this case on April 5, 2004. *See* Dismissal Per FRAP 42(b), April 5, 2004.

Tartt then filed the second Amended Complaint, in case 00-C-7960, on April 23, 2004. In this Complaint, filed against Defendants NSA and NCH, Tartt once again asserts violations of USERRA and Title VII. *See* Tartt's second Amended Complaint of April 23, 2004. Tartt once again asserts that NSA and NCH discriminated against him on the basis of his military service and race, and alleges that this discrimination adversely impacted his right to retirement benefits, stock ownership, promotions, increases in salary, and training. *Id* . at ¶ 27-28. In response, Defendants assert that these claims are barred by the principle of *res judicata,* and that Tartt has failed to state a claim under which relief can be granted.

B. Procedural Framework

Following Tartt's second Amended Complaint, the parties filed a total of five motions: 1) on May 27, 2004, Defendant NCH filed a Motion to Dismiss under Rule 12(b)(6) [91-1]; 2) on May 27, 2004,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2004 WL 2254041 (N.D.Ill.)

Defendant NSA filed a **Motion** to **Dismiss** under Rule 12(b)(6) [90-1]; 3) on May 27, 2004, Defendant NSA filed a Motion for Sanctions under Rule 11 against Tartt and Tartt's counsel [90-2]; 4) on June 10, 2004, Tartt filed a Motion for Leave of the Court to File the Plaintiff's Answer to the Defendants' **Motions** to **Dismiss** Our Amended Complaint, Instanter [92-1]; and 5) on August 6, 2004, NCH filed a Motion to Strike Plaintiff Tartt's Answer to Defendant Northwest Community Healthcare and Defendant Northwest Suburban Anesthesiologists **Motions** to **Dismiss** Plaintiff Tartt's Amended Complaint [97-1]. All of these motions are fully briefed and before the court.

## II. DISCUSSION

A. Tartt's Motion for Leave of the Court to File the Plaintiff's Answers to the Defendants' **Motions** to **Dismiss** Our Amended Complaint, Instanter

During a May 13, 2004 status hearing, counsel for Defendants indicated to the court that they intended to file **Motions** to **Dismiss**. In response, the court then set a briefing schedule for these motions. Defendants were to file their motions by May 27. Tartt was directed to file his response by June 10, and Defendants were to file their reply by June 17. Defendants both timely filed their **Motions** to **Dismiss**. Tartt, however, failed to file his response by June 10. Instead, on June 10, Tartt's attorneys, James Merle Childs, Jr. and Elijah Imanuel Meshiah, filed something styled a "Motion for Leave of the Court to File the Plaintiff's Answers to the Defendants' **Motions** to **Dismiss** Our Amended Complaint, Instanter."Nowhere in this Motion is there any direct response to Defendants' **Motions** to **Dismiss**. Instead, Tartt's attorneys assert that it was not possible for them to timely respond to Defendants' **Motions**, as Meshiah received a copy of NSA's Motion on June 7. However, Childs and Meshiah admit that they both received a copy of NCH's Motion on May 27, and that Childs received NSA's Motion on June 3. Childs and Meshiah do not explain why one week was insufficient time to prepare their response, nor do they explain why they failed to ask the court for more time. As Tartt's attorneys have failed to meet the court imposed deadline for filing their response to Defendants' **Motions** to **Dismiss**, and have offered no reasonable explanation for this failure, Tartt's Motion For Leave of Court to File the Plaintiff's Answers to

the Defendants' **Motions** to **Dismiss** Our Amended Complaint, Instanter, is denied.

B. Defendant Northwest Community Hospital's Motion to Strike

**\*3** As discussed above, *seesupra* II A, Tartt offers no reasonable explanation for his failure to timely respond to Defendants' **Motions** to **Dismiss**. However, on July 8, 2004, Tartt's attorneys filed Plaintiff Tartt's Answer to Defendant Northwestern Community Healthcare and Defendant Northwestern Suburban Anesthesiologists **Motion** to **Dismiss** Plaintiff Tartt's Amended Complaint. Defendant NCH then filed its Motion to Strike, correctly asserting that Tartt's attorneys had filed this responsive pleading nearly one month late, without leave of the court to do so. Defendant Northwestern Community Hospital's Motion to Strike is therefore granted. *See*Fed.R.Civ.P. 12(f).

C. Defendants Northwest Community Hospital's and Northwest Suburban Anesthesiologist's **Motions** to **Dismiss**

1. Standard for **Motions** to **Dismiss**

When reviewing a **motion** to **dismiss** under Rule 12(b)(6), a court merely looks to the sufficiency of the complaint. *Autry v. Northwestern Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir.1998). In examining a **motion** to **dismiss**, a court should "accept all well-plead allegations in the complaint as true,"*Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 637 (7th Cir.2004), and view "plaintiff's factual allegations and any inferences reasonably drawn therefrom in a light most favorable to the plaintiff."*Yasak v. Ret. Bd. of the Policemen's Annuity Fund,* 357 F.3d 677, 678 (7th Cir.2004). Dismissal under Rule 12(b)(6) is proper when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."*Weizeorick v. Abnamro Mortgage Group, Inc.,* 337 F.3d 827, 830 (7th Cir.2003). Put another way, "[d]ismissal under Rule 12(b)(6) is only appropriate when there is no possible interpretation of the complaint under which it can state a claim."*Flannery,* 354 F.3d at 637.

A complaint may be dismissed on the grounds of *res judicata.See*Andersen v. Chrysler Corp., 99 F.3d 846,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2254041 (N.D.Ill.)

852 (7th Cir.1996). The doctrine of *res judicata* acts as a bar to prevent plaintiffs from relitigating claims or issues already decided by a court. *SeeBrzostowski v. Laidlaw Waste Sys., Inc.,* 49 F.3d 337, 338 (7th Cir.1995). To obtain a dismissal on the basis of *res judicata,* a defendant must show "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits."*Andersen,* 99 F.3d at 852;*Brzostowski,* 49 F.3d at 338. "Res judicata is intended to protect a 'victorious party from being dragged into court time and time again by the same opponent on the same cause of action'...."*Lee v. Vill, of River Forest,* 936 F.2d 976, 981 (7th Cir.1991) (quoting *Magnus Electronics, Inc. v. La Republica Argentina,* 830 F.2d 1396, 1403 (7th Cir.1987)).

### 2. Res Judicata

Both NCH and NSA assert that Tartt's present Amended Complaint is barred by *res judicata.*NCH and NSA direct the court's attention to case 7959, which the court previously dismissed. *See* Minute Order of January 29, 2003. To successfully argue that Tartt's present claims are barred by *res judicata,* NCH and NSA must show that 1) there was a judgment on the merits in 7959, 2) they are either the same party as, or in privity with, the Defendant in 7959, and 3) that the cause of action in 7959 is identical to the cause of action in the present Amended Complaint. *SeeBrzostowski,* 49 F.3d at 338;*Andersen,* 99 F.3d at 852. Both defendants have successfully made these showings.

**\*4** There is no question that there was a final judgment on the merits in 7959: the court dismissed that case with prejudice. *See* Minute Order of January 29, 2003. A dismissal with prejudice is a final judgment on the merits. *SeeElmore v. Henderson,* 227 F.3d 1009, 1011 (7th Cir.2000)."[A] dismissal with prejudice is a final judgment on the merits which will bar a second suit between the two parties for the same cause of action."*Phillips v.. Shannon,* 445 F.2d 460, 462 (7th Cir.1971).

Defendant NSA is obviously the same party as the Defendant in 7959. A trickier question is whether Defendant NCH is in privity with NSA. *SeeIn re L & S Indus.,* 989 F.2d 929, 932 (7th Cir.1993) ("Privity is an elusive concept."). The Seventh Circuit has explained that two parties are in privity, for the

purposes of *res judicata,* when their interests are closely related. *SeeStudio Art Theater of Evansville, Inc. v. City of Evansville, Ind.,* 76 F.3d 128, 131 (7th Cir.1996) (finding privity where parties shared a "clear 'congruence' of legal issues"). If two parties have a "sufficiently close identity of interests," a court may properly find that the parties are in privity. *Tice v. Am. Airlines,* 162 F.3d 966, 971 (7th Cir.1998). In this case, there is a "sufficiently close identity of interests" between NSA and NCH. Tartt, while employed by NSA, performed his services as an anesthesiologist at NCH. NCH and NSA agreed that NSA would be the exclusive provider of anesthesiology at NCH. All of Tartt's claims against NCH arise out of his employment with NSA. The court therefore finds that Defendants NCH and NSA are in privity for the purposes of *res judicata.*

Finally, the court finds that the causes of action in 7569 and this case are identical. "A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action."*Brzostowski,* 49 F.3d at 338 (quoting *Colonial Penn Life Ins. Co. v. Hallmark Ins. Admin. Inc.,* 31 F.3d 445, 447 (7th Cir.1994))."Under the federal common law of res judicata, a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment."*Okoro v. Bohman,* 164 F.3d 1059, 1062 (7th Cir.1999) (citing *Wilson v. City of Chicago,* 120 F.3d 681, 687 (7th Cir.1997)). In his present Amended Complaint, Tartt repeats the same allegations he made in 7959. He alleges, as he alleged in 7959, that he entered into an employment agreement with NSA in 1993. *Compare* Def. NCH's **Mot.** to **Dismiss** Amended Compl., Ex. 1, ¶ 6, *withid.,* Ex. 2, ¶ 3. He alleges that he entered the military in July 1994, and took a leave of absence from NSA. *Compare* Def. NCH's **Mot.** to **Dismiss** Amended Compl., Ex. 1, ¶ 9, *withid.*Ex. 2, ¶ 4. He alleges that upon his return to NSA, he was coerced into signing a revised employment agreement. *Compare* Def. NCH's **Mot.** to **Dismiss** Amended Compl., Ex. 1, ¶ 13, *withid.*Ex. 2, ¶¶ 14-15. Finally, he alleges that this revised employment agreement denied him certain employment benefits, including, *inter alia,* retirement benefits, stock ownership, promotions, and salary. *Compare* Def. NCH's **Mot.** to **Dismiss** Amended Compl., Ex. 1, ¶ 28, *withid.*Ex. 2, ¶¶ 5, 16-17, 19-21. Since Tartt's instant claim is based on the same "factual nebula" as his prior claim

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                 Page 5
Not Reported in F.Supp.2d, 2004 WL 2254041 (N.D.Ill.)

in 7959, the court finds that, for the purposes of *res judicata,* the claims are identical. See*Okoro,* 164 F.3d at 1062.

**\*5** Since Defendants have successfully shown that case 7959 reached a final judgment on the merits, that Defendant NSA is the same as the Defendant in case 7959, that Defendant NCH is in privity with NSA, and that the causes of action in case 7959 and the present Amended Complaint are identical, the court holds that Tartt's present Amended Complaint is barred by *res judicata.*With an abundance of caution, however, the court will examine Defendants' alternative grounds for dismissal.

**3. Tartt's Title VII Claims**

A plaintiff seeking to file an employment discrimination suit under Title VII must receive authorization from the Equal Employment Opportunity Commission ("EEOC") to do so. See*42 U.S.C. § 2000e-5(b), (e), and (f).* The complaint must file a complaint with the EEOC, and receive from the EEOC a "statutory notice of the right to sue," before bringing a Title VII action in a federal court. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In Illinois, the plaintiff must file an EEOC claim within three hundred days of the allegedly discriminatory conduct. *EEOC v. Harvey L. Walner & Assocs.,* 91 F.3d 963, 970 (7th Cir.1996). Defendants correctly assert that Tartt has failed to meet this three hundred day deadline. In fact, Tartt has never filed an EEOC claim at all. Tartt's Title VII claims therefore fail.

**4. Tartt's USERRA Claims**

In order to properly plead a claim of employment discrimination under **USERRA**, Tartt must allege that his employer, NSA, took discriminatory employment actions against him that were motivated at least in part by his military service. 38 U.S.C. § 4311(c)(1)."An employer shall be considered to have engaged in actions prohibited-(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action ..."*Id.;see*also*Miller v. City of Indianapolis,* 281 F.3d

648, 650 (7th Cir.2002). Tartt's present Complaint offers only the bare allegation that NSA discriminated against him based on his service in the military. *See* Def. Northwest Cmty. Hosp.'s **Mot.** to **Dismiss** Amended Compl., Ex. 1, ¶¶ 22-28. Tartt has failed to allege any facts that would tend to show that NSA took any **adverse** employment action towards him that was motivated by his service in the military. See*Panaras v. Liquid Carbonic Industries Corp.,* 74 F.3d 786, 792 (7th Cir.1996) ("While federal notice-pleading allows for a generous reading of a complaint, in order to resist a **motion to dismiss**, the complaint must at least set out facts sufficient to 'outline or adumbrate' the basis of the claim."); see*also*Looper Maintenance Serv., Inc. v. City of Indianapolis,* 197 F.3d 908, 911 (7th Cir.1999) ("a complaint must allege facts bearing on all material elements necessary to sustain a recovery under some viable legal theory.") Tartt's **USERRA** claim against NSA therefore fails.[FN5]

> FN5. Tartt's **USERRA** claim against NCH fails for a simpler reason: NCH was never Tartt's employer.

**D. Defendant Northwest Suburban Anesthesiologists' Rule 11 Motion for Sanctions**

**\*6** Contained within Defendant NSA's **Motion** to **Dismiss** was an additional request for sanctions under Rule 11. One of the purposes of Rule 11 is to deter baseless filings in the district court."*Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir.1998) (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). Rule 11 sanctions may be imposed on a party for "making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose."*Id.* A frivolous argument or claim is one that is "baseless and made without a reasonable and competent inquiry."*Id.*

The court understands NSA's frustration with this protracted and costly litigation, and dismisses Tartt's claims in their entirety. However, the Motion for Sanctions is not properly before the court. NSA has failed to file its motion for sanctions separately from its **motion** to **dismiss**. See*Fed.R.Civ.P. 11(c)(1)(A)* ("A motion for sanctions under this rule shall be made separately from other motions or requests...."). The court therefore declines the invitation to sanction

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                 Page 6
Not Reported in F.Supp.2d, 2004 WL 2254041 (N.D.Ill.)

Tartt and his attorneys.

### III. CONCLUSION

For the foregoing reasons, NCH's Motion to Strike [97-1] is granted, NCH's **Motion** to **Dismiss** Amended Complaint [91-1] is granted, NSA's **Motion** to **Dismiss** Amended Complaint [90-1] is granted, Plaintiff's Motion for Leave of the Court to File the Plaintiff's Answers to the Defendants' **Motions** to **Dismiss** Our Amended Complaint [92-1] is denied, and Defendant NSA's <u>Rule 11</u> Motion for Sanctions [90-2] is denied.

IT IS SO ORDERED.

N.D.Ill.,2004.
Tartt v. Northwest Community Hosp.
Not Reported in F.Supp.2d, 2004 WL 2254041 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.